IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| JENNICE SAMUELS | ) | |
| | ) | |
| PLAINTIFF | ) | CIVIL ACTION NO._____ |
| | ) | |
| VS. | ) | |
| | ) | |
| HARLEY-DAVIDSON MOTOR | ) | HON. |
| COMPANY, INC | ) | |
| | ) | |
| DEFENDANT. | ) | |
| | ) | |

## COMPLAINT

PLAINTIFF, Jennice Samuels, by and through her attorneys, CARLA D. AIKENS, P.L.C.,

submits the following Complaint against DEFENDANT Harley-Davidson Motor Company, Inc.

## JURY DEMAND

COMES NOW PLAINTIFF, Jennice Samuels, and hereby makes her demand for trial by

jury.

## JURISDICTION

1.      Plaintiff Jennice Samuels began working at Harley-Davidson in September of 2017

and, at all times relevant to this action, was employed by Defendant Harley-Davidson Motor

Company, Inc. Plaintiff is domiciled in Grand Haven, Michigan, located in Ottawa County.

2.      Defendant Harley-Davidson Motor Company, Inc. employs more than 500

employees and conducts business throughout the United States, including within the State of

Michigan.

3.      This action is brought in this Court on the basis of federal question jurisdiction

pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(b), et seq., and the Age

1

Discrimination in Employment Act, 29 U.S.C. § 626, et seq. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

4.    Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

**VENUE**

5.    Venue is proper in the United States District Court for the Western District of Michigan, Southern Division, pursuant to 28 U.S.C. § 1391(b), as Plaintiff is domiciled in Grand Haven, Ottawa County, Michigan, and routinely performed work duties from her domicile at the direction of Defendant, which lies within this District.

**STATEMENT OF FACTS**

6.    Jennice Samuels began working at Harley-Davidson in September of 2017.

7.    Ms. Samuels' job title at hire was Supplier Diversity Manager, with an annual pay rate of $92,000.

8.    Ms. Samuels' last or current annual pay rate was $110,000.

9.    Ms. Samuels has been in the supplier diversity department for 25 years and has built many valuable relationships with national and international organizations and colleagues.

10.    Ms. Samuels' immediate supervisor was Ryan Wittenberg, Director of Supply Chain.

11.    Ms. Samuels is an African American female, born on September 29, 1954, and was 69 years of age at the commencement of the discriminatory conduct, and 70 years of age for the majority of the period of discriminatory conduct alleged herein.

12.     In July 2024, Ms. Samuels began to experience discriminatory retaliatory practices when she pushed back on the mismatch of company messaging versus actions in recent changes related to the area of Business Inclusion/Supplier Diversity and DEI.

13.     In early August 2024, Ms. Samuels pushed back to her VP Kristen Gilbert on the internal and external approach to roll back DEI and stated that the current approach of "ghosting" was not indicative of the company's longstanding partnerships with the organizations and could damage her professional reputation.

14.     Ms. Samuels expressed for several months in Teams messages, emails, and phone conversations that this treatment was damaging her professional reputation, crossed lines of her professional and personal values, and violated the company's commitment to full inclusion.

15.     Ms. Samuels' former director, during her second-quarter development discussion, asked her when she planned to retire.

16.     On September 9, 2024, Ms. Samuels confirmed with her VP Kristen Gilbert that she was directed to "Cease and Desist" in all activities regarding Business Inclusion and the organizations and activities that support that space, with no transition strategies and no explanation.

17.     Tori Termaat, Chief HR Officer, and George Prassas, Chief Communication Officer, were designated to lead all efforts in the DEI space.

18.     On or about the same time, Ms. Samuels was notified that her title was officially changed to a generic "Supply Chain Manager," with no clarity about her duties.

19.     In mid-September 2024, Tori Termaat hosted meetings with all the younger non-African American leaders in the DEI space to discuss transition, except Ms. Samuels, they are all still in their roles.

20.    In September 2024, Ms. Samuels was no longer allowed to attend external diversity events, while a younger white male co-worker was allowed to attend external diversity events with manager approval in the third quarter of 2024.

21.    Kent Peterson, Manufacturing Lead, a younger white male, was allowed to attend external diversity events in October 2024 while Ms. Samuels was prohibited from doing so.

22.    On September 26, 2024, in a Teams meeting with NMSDC senior leadership, VP Kristen Gilbert told NMSDC that Harley-Davidson would not continue its current relationship or attend the October conference due to "noise from activists," and stated that recent program reviews indicated leadership was not aware of the relationship and had not provided approval for the brand to be engaged.

23.    These statements were grossly inaccurate and presented Ms. Samuels as having operated outside of corporate knowledge and without appropriate approvals, damaging her professional integrity with national organizations she had managed for years.

24.    Harley-Davidson had been a co-sponsor of the high-level Joint Leadership Reception at the NMSDC conference, pursuant to a $30,000 budget-approved contract managed by Ms. Samuels, which was never paid.

25.    In mid-September 2024, Ms. Samuels complained that she was receiving emails, which were copied to the highest level of the national organization "Disability IN", from her white male mentees about her abrupt lack of communication and participation in the mentor program "Propel," which she noted as a blemish on her professional reputation.

26.    Ms. Samuels also pushed back on being told by Kristen Gilbert that she could continue mentoring white male entrepreneurs but could not mentor LGBTQ+ entrepreneurs.

27.    In early August 2024, Ms. Samuels was told by George Prassas that she could no longer engage with the LGBTQ+ entrepreneur via the education support program, and was directed to have the Chamber remove her name and company logo from the WI LGBTQ website.

28.    On October 6, 2024, Ms. Samuels was notified by an entrepreneur that her co-worker, a younger white male, was the new Harley-Davidson mentor, and that she was no longer part of the program. Robert Wahl, IT Officer, a new Harley-Davidson employee, was allowed to mentor Ms. Samuels' mentees, despite having no experience mentoring entrepreneurs.

29.    A young African American female mentee received no continued support from Harley-Davidson after Ms. Samuels was removed from the program.

30.    Ryan Wittenberg, Director of Supply Chain and Ms. Samuels' manager, was aware of the changes to her role and of Robert Wahl taking her place as a mentor for diverse suppliers, and was instructed not to speak to Ms. Samuels about any of her concerns regarding the DEI issues.

31.    Kristen Gilbert, VP Supply Chain, was instructed by Tori Termaat to make all changes and not to provide reasons, and, as Ms. Samuels' manager at the time, requested more understanding about the decisions but was denied that information as well.

32.    In November 2024, Ms. Samuels filed an official complaint with Harley-Davidson's Legal/Corporate Compliance department and completed the internal investigation process led by Madeline Tzall.

33.    On January 21, 2025, Ms. Samuels asked Madeline Tzall whether the investigation was complete. Mitchell Boyd responded that it was complete, but when Ms. Samuels asked for the status of the results, Mitchell Boyd indicated that no information would be shared.

34.    In February 2025, Mitchell Boyd began pushing Ms. Samuels to disclose her position on how Harley-Davidson should work with diverse suppliers. Ms. Samuels reminded him that it was not her area and was not her call.

35.    On February 27, 2025, Mitchell Boyd continued to push Ms. Samuels for information on diverse suppliers.

36.    She again reminded him it was not her area, confirmed with him that it had been a subject of the internal investigation conversation she had conducted with Madeline Tzall, and refused to engage him further, as his conduct seemed designed to cause her to violate the internal investigation agreement or change her account of events.

37.    As a result of Defendant's ongoing discriminatory and retaliatory conduct, Ms. Samuels has suffered mental and emotional hardship, and damage to her professional reputation has been dismissed and has severely injured professional relationships built over twenty-plus years.

## EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

38.    Ms. Samuels exhausted her administrative remedies and satisfied this jurisdictional prerequisite.

39.    Ms. Samuels filed a Charge of Discrimination with the Equal Employment Opportunity Commission regarding Defendant's discriminatory conduct: Charge No. 443-2026-01329.

40.    The Equal Employment Opportunity Commission issued a Determination and Notice of Rights on April 8, 2026, dismissing the charge and granting Ms. Samuels the right to sue.

## COUNT-I

**Violation of Title VII of the Civil Rights Act of 1964; Race and Color Discrimination**

41.    Plaintiff Jennice Samuels incorporates by reference all allegations in the preceding paragraphs.

42.    Ms. Samuels brings this suit under a federal law called Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-5(b), et seq.

43.    Ms. Samuels claims Defendant Harley-Davidson Motor Company, Inc. discriminated against her because of her race and color.

44.    At all relevant times, Ms. Samuels was an employee of Defendant Harley-Davidson within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et seq.

45.    At all relevant times, Defendant Harley-Davidson was an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et seq., employing more than 500 employees.

46.    At all relevant times, Ms. Samuels was a qualified individual who could perform the essential functions of her job. Ms. Samuels held the position of Supplier Diversity Manager, with 25 years of experience in the supplier diversity field.

47.    Ms. Samuels is an African American woman.

48.    At all relevant times hereto, Defendant Harley-Davidson had a duty under Title VII not to discriminate against Ms. Samuels with respect to compensation or terms, conditions, or privileges of employment because of her race or color.

49.    Notwithstanding said duties as set forth above, Defendant discriminated against Ms. Samuels because of her race and color.

50.    Ms. Samuels was directed by VP Kristen Gilbert to "cease and desist" all activities related to Business Inclusion, with no transition plan or explanation, and her title was changed to a generic "Supply Chain Manager," with no clarity about her duties.

51.    In mid-September 2024, Tori Termaat hosted meetings with all younger non-African American leaders in the DEI space to discuss transition, except Ms. Samuels, they are all still in their roles.

52.    Ms. Samuels was no longer allowed to attend external diversity events while a younger white male co-worker was permitted to attend such events with manager approval.

53.    On October 6, 2024, Ms. Samuels was removed as lead for the Manufacturing and DEI mentor programs and replaced by a younger white male with no experience mentoring entrepreneurs.

54.    As a direct and proximate result of Defendant's discrimination, Ms. Samuels has suffered and will continue to suffer lost wages and other economic advantages of employment.

55.    As a direct and proximate result of Defendant's discrimination, Ms. Samuels has suffered and will continue to suffer mental and emotional pain and suffering, including but not limited to loss of enjoyment of a normal life due to depression, anxiety, worry, humiliation, grief, sadness, and anger.

56.    As a direct and proximate result of Defendant's discrimination, Ms. Samuels' professional reputation, built over twenty-plus years, has been severely damaged.

<u>**COUNT-II**</u>

**Violation of Title VII of the Civil Rights Act of 1964; Sex Discrimination**

57.    Plaintiff Jennice Samuels incorporates by reference all allegations in the preceding paragraphs.

58.    Ms. Samuels brings this suit under a federal law called Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-5(b), et seq.

59.    Ms. Samuels claims Defendant Harley-Davidson discriminated against her on the basis of sex.

60.    At all relevant times, Ms. Samuels was an employee of Defendant Harley-Davidson within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et seq.

61.    At all relevant times, Defendant Harley-Davidson was an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et seq., employing more than 500 employees.

62.    At all relevant times hereto, Defendant Harley-Davidson had a duty under Title VII not to discriminate against Ms. Samuels with respect to compensation or terms, conditions, or privileges of employment because of her sex.

63.    Notwithstanding said duties as set forth above, Defendant discriminated against Ms. Samuels because of her sex.

64.    Ms. Samuels, a female, was removed from her leadership role and from the mentoring program, while younger white male counterparts, including Kent Peterson and Robert Wahl, were permitted to attend external diversity events and assume mentoring responsibilities that previously belonged to Ms. Samuels.

65.    Ms. Samuels was told she could continue mentoring white male entrepreneurs but was prohibited from mentoring LGBTQ+ entrepreneurs, and her mentoring relationships were ultimately transferred to a male co-worker.

66.    As a direct and proximate result of Defendant's sex discrimination, Ms. Samuels has suffered and will continue to suffer lost wages and other economic advantages of employment.

67.    As a direct and proximate result of Defendant's sex discrimination, Ms. Samuels has suffered and will continue to suffer mental and emotional pain and suffering, including but not limited to loss of enjoyment of a normal life due to depression, anxiety, worry, humiliation, grief, sadness, and anger.

68.    As a direct and proximate result of Defendant's sex discrimination, Ms. Samuels' professional reputation has been severely and irreparably damaged.

### COUNT-III

**Violation of the Age Discrimination in Employment Act, Age Discrimination**

69.    Plaintiff Jennice Samuels incorporates by reference all allegations in the preceding paragraphs.

70.    Ms. Samuels brings this suit under a federal law called the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 626, et seq.

71.    Ms. Samuels claims Defendant Harley-Davidson discriminated against her on the basis of age.

72.    At all relevant times, Ms. Samuels was an employee of Defendant Harley-Davidson within the meaning of the Age Discrimination in Employment Act.

73.    At all relevant times, Defendant Harley-Davidson was an employer within the meaning of the Age Discrimination in Employment Act, employing more than 500 employees.

74.    Ms. Samuels was 71 years of age at the time of the discriminatory conduct alleged herein, and thus was within the class of individuals protected by the ADEA (age 40 or older).

75.    At all relevant times hereto, Defendant Harley-Davidson had a duty under the ADEA not to discriminate against Ms. Samuels with respect to compensation or terms, conditions, or privileges of employment because of her age.

76.    Notwithstanding said duties as set forth above, Defendant discriminated against Ms. Samuels because of her age.

77.    Ms. Samuels' former director, during her second-quarter development discussion, asked her when she planned to retire.

78.    Younger non-African American leaders of DEI efforts were not removed from their roles but were offered executive-level support, while Ms. Samuels was removed without warning or explanation.

79.    In mid-September 2024, Tori Termaat hosted meetings with all younger non-African American leaders in the DEI space to discuss transition, except Ms. Samuels, they are all still in their roles.

80.    A younger white male co-worker was allowed to engage mentee relationships with entrepreneurs whom Ms. Samuels had previously mentored.

81.    As a direct and proximate result of Defendant's age discrimination, Ms. Samuels has suffered and will continue to suffer lost wages and other economic advantages of employment.

82.    As a direct and proximate result of Defendant's age discrimination, Ms. Samuels has suffered and will continue to suffer mental and emotional pain and suffering, including but not limited to loss of enjoyment of a normal life due to depression, anxiety, worry, humiliation, grief, sadness, and anger.

83.    As a direct and proximate result of Defendant's age discrimination, Ms. Samuels' professional reputation and relationships built over twenty-plus years have been severely damaged.

**COUNT-IV**

**Violation of Title VII of the Civil Rights Act of 1964; Retaliation**

11

84.     Plaintiff Jennice Samuels incorporates by reference all allegations in the preceding paragraphs.

85.     Ms. Samuels brings this suit under a federal law called Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-5(b), et seq.

86.     Ms. Samuels claims Defendant Harley-Davidson retaliated against her for engaging in protected activity.

87.     At all relevant times, Ms. Samuels was an employee of Defendant Harley-Davidson within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et seq.

88.     At all relevant times, Defendant Harley-Davidson was an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et seq., employing more than 500 employees.

89.     At all relevant times hereto, Defendant had a duty not to retaliate against Ms. Samuels with respect to her employment, compensation, or terms, conditions, or privileges of employment for opposing practices made unlawful under Title VII.

90.     Ms. Samuels engaged in protected activity when she objected to Defendant's racially and sex-based discriminatory conduct. In early August 2024, Ms. Samuels pushed back to her VP Kristen Gilbert on the internal and external approach to roll back DEI and stated that the current approach could damage her professional reputation.

91.     In November 2024, Ms. Samuels filed an official complaint to Legal/Corporate Compliance and completed the internal investigation process led by Madeline Tzall.

92.     Notwithstanding Defendant's duties as set forth above, Defendant retaliated against Ms. Samuels for her opposition to discrimination by, among other things: directing her to "cease and desist" all activities related to Business Inclusion with no transition plan or explanation;

changing her title to a generic "Supply Chain Manager" with no clarity about her duties; excluding her from meetings with younger non-African American DEI leaders about transition planning; prohibiting her from attending external diversity events while permitting younger white male colleagues to do so; removing her from the DEI mentor program and replacing her with a younger white male colleague with no mentoring experience; and refusing to communicate the results of the internal investigation she had filed and then subjecting her to further pressure designed to cause her to alter or violate her account of events.

93.    As a direct and proximate result of Defendant's retaliation, Ms. Samuels has suffered and will continue to suffer lost wages and other economic advantages of employment.

94.    As a direct and proximate result of Defendant's retaliation, Ms. Samuels has suffered and will continue to suffer mental and emotional pain and suffering, including but not limited to loss of enjoyment of a normal life due to depression, anxiety, worry, humiliation, grief, sadness, and anger.

95.    As a direct and proximate result of Defendant's retaliation, Ms. Samuels' professional reputation, built over twenty-plus years in the supplier diversity field, has been severely and irreparably damaged.

## COUNT-V

### Violation of the Age Discrimination in Employment Act; Retaliation

96.    Plaintiff Jennice Samuels incorporates by reference all allegations in the preceding paragraphs.

97.    Ms. Samuels brings this suit under a federal law called the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 626, et seq.

98.    Ms. Samuels claims Defendant Harley-Davidson retaliated against her for opposing age-based discriminatory conduct.

99.    At all relevant times, Ms. Samuels was an employee of Defendant Harley-Davidson within the meaning of the Age Discrimination in Employment Act.

100.    At all relevant times, Defendant Harley-Davidson was an employer within the meaning of the Age Discrimination in Employment Act, employing more than 500 employees.

101.    At all relevant times hereto, Defendant had a duty not to retaliate against Ms. Samuels with respect to her employment, compensation, or terms, conditions, or privileges of employment for opposing practices made unlawful under the ADEA.

102.    Ms. Samuels engaged in protected activity when she objected to Defendant's age-based discriminatory treatment of her, including by opposing her removal from leadership roles that were given to younger employees, filing a formal internal complaint, and challenging the pretextual reasons given for the adverse employment actions taken against her.

103.    Notwithstanding Defendant's duties as set forth above, Defendant willfully retaliated against Ms. Samuels for her protected activity by removing her from her leadership role and mentoring responsibilities, stripping her of her title, excluding her from transition discussions offered to younger counterparts, prohibiting her from attending professional events that younger colleagues were permitted to attend, and refusing to share the results of the internal investigation she had initiated.

104.    As a direct and proximate result of Defendant's retaliation, Ms. Samuels has suffered and will continue to suffer lost wages and other economic advantages of employment.

105.    As a direct and proximate result of Defendant's retaliation, Ms. Samuels has suffered and will continue to suffer mental and emotional pain and suffering, including but not

limited to loss of enjoyment of a normal life due to depression, anxiety, worry, humiliation, grief, sadness, and anger.

106. As a direct and proximate result of Defendant's retaliation, Ms. Samuels' professional reputation and relationships built over twenty-plus years have been severely damaged.

## COUNT-VI

**Violation of the Michigan Elliott-Larsen Civil Rights Act -- Race and Color Discrimination**

107. Plaintiff Jennice Samuels incorporates by reference all allegations in the preceding paragraphs.

108. Ms. Samuels brings this count under the Michigan Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2101, et seq.

109. Under Mich. Comp. Laws § 37.2202(1)(a), an employer shall not "fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of . . . race [or] color."

110. At all relevant times, Ms. Samuels was an employee of Defendant Harley-Davidson Motor Company, Inc. within the meaning of the ELCRA.

111. At all relevant times, Defendant Harley-Davidson was an employer within the meaning of the ELCRA, employing more than 500 employees.

112. At all relevant times, Ms. Samuels performed at least some of her work duties remotely from her home in Grand Haven, Ottawa County, Michigan, such that the harmful effects of Defendant's discriminatory conduct were suffered by Ms. Samuels in the State of Michigan.

113.    Ms. Samuels is an African American woman. At all relevant times, she was a qualified individual who could perform the essential functions of her role as Supplier Diversity Manager, with twenty-five years of experience in the supplier diversity field.

114.    At all relevant times hereto, Defendant Harley-Davidson had a duty under the ELCRA not to discriminate against Ms. Samuels with respect to compensation or terms, conditions, or privileges of employment because of her race or color.

115.    Notwithstanding said duties as set forth above, Defendant discriminated against Ms. Samuels because of her race and color.

116.    Ms. Samuels was directed to "cease and desist" all activities related to Business Inclusion with no transition plan or explanation, while Tori Termaat hosted meetings with all younger non-African American leaders in the DEI space to discuss transition -- they are all still in their roles.

117.    Ms. Samuels was prohibited from attending external diversity events while younger white male co-workers were permitted to attend such events with manager approval.

118.    Ms. Samuels was removed from the DEI mentoring program and replaced by a younger white male colleague with no mentoring experience.

119.    As a direct and proximate result of Defendant's race and color discrimination in violation of the ELCRA, Ms. Samuels has suffered and will continue to suffer lost wages and other economic advantages of employment.

120.    As a direct and proximate result of Defendant's race and color discrimination in violation of the ELCRA, Ms. Samuels has suffered and will continue to suffer mental and emotional pain and suffering, including but not limited to loss of enjoyment of a normal life due to depression, anxiety, worry, humiliation, grief, sadness, and anger.

121.    As a direct and proximate result of Defendant's race and color discrimination, Ms. Samuels' professional reputation and relationships built over twenty-plus years have been severely damaged.

## COUNT-VII

**Violation of the Michigan Elliott-Larsen Civil Rights Act -- Sex Discrimination**

122.    Plaintiff Jennice Samuels incorporates by reference all allegations in the preceding paragraphs.

123.    Ms. Samuels brings this count under the Michigan Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2101, et seq.

124.    Under Mich. Comp. Laws § 37.2202(1)(a), an employer shall not "fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of . . . sex."

125.    At all relevant times, Ms. Samuels was an employee of Defendant Harley-Davidson Motor Company, Inc. within the meaning of the ELCRA.

126.    At all relevant times, Defendant Harley-Davidson was an employer within the meaning of the ELCRA, employing more than 500 employees.

127.    At all relevant times, Ms. Samuels performed at least some of her work duties remotely from her home in Grand Haven, Ottawa County, Michigan, such that the harmful effects of Defendant's discriminatory conduct were suffered by Ms. Samuels in the State of Michigan.

128.    At all relevant times hereto, Defendant Harley-Davidson had a duty under the ELCRA not to discriminate against Ms. Samuels with respect to compensation or terms, conditions, or privileges of employment because of her sex.

129.    Notwithstanding said duties as set forth above, Defendant discriminated against Ms. Samuels because of her sex.

130.    Ms. Samuels, a female, was removed from her leadership role and from the mentoring program, while younger white male counterparts, including Kent Peterson and Robert Wahl, were permitted to attend external diversity events and assume mentoring responsibilities that previously belonged to Ms. Samuels.

131.    Ms. Samuels was told she could continue mentoring white male entrepreneurs but was prohibited from mentoring LGBTQ+ entrepreneurs, and her mentoring relationships were ultimately transferred to a male co-worker without her knowledge or consent.

132.    As a direct and proximate result of Defendant's sex discrimination in violation of the ELCRA, Ms. Samuels has suffered and will continue to suffer lost wages and other economic advantages of employment.

133.    As a direct and proximate result of Defendant's sex discrimination in violation of the ELCRA, Ms. Samuels has suffered and will continue to suffer mental and emotional pain and suffering, including but not limited to loss of enjoyment of a normal life due to depression, anxiety, worry, humiliation, grief, sadness, and anger.

134.    As a direct and proximate result of Defendant's sex discrimination, Ms. Samuels' professional reputation and relationships built over twenty-plus years have been severely damaged.

## COUNT-VIII

**Violation of the Michigan Elliott-Larsen Civil Rights Act -- Age Discrimination**

135.    Plaintiff Jennice Samuels incorporates by reference all allegations in the preceding paragraphs.

18

136.    Ms. Samuels brings this count under the Michigan Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2101, et seq.

137.    Under Mich. Comp. Laws § 37.2202(1)(a), an employer shall not "fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of . . . age."

138.    At all relevant times, Ms. Samuels was an employee of Defendant Harley-Davidson Motor Company, Inc. within the meaning of the ELCRA.

139.    At all relevant times, Defendant Harley-Davidson was an employer within the meaning of the ELCRA, employing more than 500 employees.

140.    At all relevant times, Ms. Samuels performed at least some of her work duties remotely from her home in Grand Haven, Ottawa County, Michigan, such that the harmful effects of Defendant's discriminatory conduct were suffered by Ms. Samuels in the State of Michigan.

141.    Ms. Samuels was born on September 29, 1954, and was 69 years of age at the commencement of the discriminatory conduct alleged herein. She is within the class of individuals protected by the ELCRA's prohibition on age discrimination.

142.    At all relevant times hereto, Defendant Harley-Davidson had a duty under the ELCRA not to discriminate against Ms. Samuels with respect to compensation or terms, conditions, or privileges of employment because of her age.

143.    Notwithstanding said duties as set forth above, Defendant discriminated against Ms. Samuels because of her age.

144.    Ms. Samuels' former director, during her second-quarter development discussion, asked her when she planned to retire.

19

145.   In mid-September 2024, Tori Termaat hosted meetings with all younger non-African American leaders in the DEI space to discuss transition, except Ms. Samuels -- they are all still in their roles.

146.   A younger white male co-worker was allowed to engage in mentee relationships with entrepreneurs whom Ms. Samuels had previously mentored, despite having no experience mentoring entrepreneurs.

147.   As a direct and proximate result of Defendant's age discrimination in violation of the ELCRA, Ms. Samuels has suffered and will continue to suffer lost wages and other economic advantages of employment.

148.   As a direct and proximate result of Defendant's age discrimination in violation of the ELCRA, Ms. Samuels has suffered and will continue to suffer mental and emotional pain and suffering, including but not limited to loss of enjoyment of a normal life due to depression, anxiety, worry, humiliation, grief, sadness, and anger.

149.   As a direct and proximate result of Defendant's age discrimination, Ms. Samuels' professional reputation and relationships built over twenty-plus years have been severely damaged.

## COUNT-IX

### Violation of the Michigan Elliott-Larsen Civil Rights Act – Retaliation

150.    Plaintiff Jennice Samuels incorporates by reference all allegations in the preceding paragraphs.

151.   Ms. Samuels brings this count under the Michigan Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2101, et seq.

152.   Under Mich. Comp. Laws § 37.2202(1)(a), an employer shall not discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege

of employment because of race, color, sex, or age. The ELCRA further prohibits retaliation against an employee who opposes a violation of the Act or who participates in a proceeding under the Act.

153.   At all relevant times, Ms. Samuels was an employee of Defendant Harley-Davidson Motor Company, Inc. within the meaning of the ELCRA.

154.   At all relevant times, Defendant Harley-Davidson was an employer within the meaning of the ELCRA, employing more than 500 employees.

155.   At all relevant times, Ms. Samuels performed at least some of her work duties remotely from her home in Grand Haven, Ottawa County, Michigan, such that the harmful effects of Defendant's retaliatory conduct were suffered by Ms. Samuels in the State of Michigan.

156.   Ms. Samuels engaged in protected activity under the ELCRA when she opposed Defendant's racially, sex-based, and age-based discriminatory conduct. In early August 2024, Ms. Samuels pushed back to her VP Kristen Gilbert on the internal and external approach to roll back DEI and stated that the current approach could damage her professional reputation.

157.   In November 2024, Ms. Samuels filed an official complaint with Harley-Davidson's Legal/Corporate Compliance department and completed the internal investigation process led by Madeline Tzall, further constituting protected activity.

158.   Notwithstanding Defendant's duties as set forth above, Defendant retaliated against Ms. Samuels for her protected activity by, among other things: directing her to "cease and desist" all activities related to Business Inclusion with no transition plan or explanation; changing her title to a generic "Supply Chain Manager" with no clarity about her duties; excluding her from transition meetings offered to younger non-African American DEI leaders; prohibiting her from attending external diversity events while permitting younger white male colleagues to attend; removing her from the DEI mentor program and replacing her with a younger white male with no

mentoring experience; and refusing to communicate the results of the internal investigation she had filed and then subjecting her to further pressure designed to cause her to alter her account of events.

159.    As a direct and proximate result of Defendant's retaliation in violation of the ELCRA, Ms. Samuels has suffered and will continue to suffer lost wages and other economic advantages of employment.

160.    As a direct and proximate result of Defendant's retaliation in violation of the ELCRA, Ms. Samuels has suffered and will continue to suffer mental and emotional pain and suffering, including but not limited to loss of enjoyment of a normal life due to depression, anxiety, worry, humiliation, grief, sadness, and anger.

161.    As a direct and proximate result of Defendant's retaliation, Ms. Samuels' professional reputation and relationships built over twenty-plus years in the supplier diversity field have been severely and irreparably damaged.

## RELIEF REQUESTED

PLAINTIFF Jennice Samuels respectfully requests that this Honorable Court enter judgment against Defendant as follows:

1. Compensatory damages in whatever amount to which Plaintiff is entitled;

2. Reinstatement, or in the alternative, front pay to whatever amount Plaintiff is entitled.

3. An order granting preliminary and permanent injunctive relief against Defendant Harley-Davidson;

4. Exemplary and/or punitive damages in whatever amount to which Plaintiff is entitled;

5. An award of lost wages and the value of fringe benefits;

6. An award of interest, costs, and reasonable attorney fees; and

7. An order awarding whatever other equitable relief appears appropriate at the time of final

judgment.

Dated: June 29, 2026            Respectfully Submitted,

*/s/  Carla D. Aikens*
Carla D. Aikens (P69530)
Carla D. Aikens, P.L.C.
*Attorneys for Plaintiff*
615 Griswold Ste. 709
Detroit, MI 48226
carla@aikenslawfirm.com

23